Plaintiff, while performing the duties of his employment with the Hunt Oil Company, on June 14, 1946, experienced an accident that produced an incomplete indirect inguinal hernia, right side. He submitted to a herniotomy by Dr. C.O. Wolff on June 27th and was discharged from the sanitarium on July 5th. He remained in bed for five days and thereafter intermittently returned to the doctor for further examinations. This continued for some twelve weeks. During this time, and until October 21, 1946, plaintiff was paid compensation at the rate of $20.00 per week. Payments were discontinued on the advice of Dr. Wolff, who was of the opinion that his physical condition was such that he was able to resume work as an oil field worker. He promptly employed counsel who instituted this suit against Hartford Accident and Indemnity Company, carrier of workmen's compensation insurance for Hunt Oil Company, to recover compensation as in case of permanent total disability.
Plaintiff alleged that the operation performed by Dr. Wolff was unsuccessful; that since that time he has continuously experienced serious pain and tenderness in the area of the operation and that the hernia has recurred with totally disabling effects.
Defendant denies that plaintiff now suffers disability to perform the character of labor he was performing when injured and avers that the operation by Dr. Wolff was successful. For these reasons, it urges, compensation payments were properly discontinued.
Several months subsequent to joinder of issue by answer, plaintiff filed an amendment to his petition wherein he alleged that through recent examinations of himself at defendant's instance it was discovered that either as a result of the original injury or of the operation, or as a result of both, he "now has a serious trouble or impairment in and to his right testicle and cord thereof which are among the causes of his alleged disability to do work of any reasonable kind"; that his right testicle and cord are greatly enlarged and swollen. Defendant denied the allegations of the amended petition.
There was judgment for plaintiff as by him prayed. Defendant appealed. The lower court gave lengthy written reasons for its judgment.
We are confronted in this case, as so often happens in cases of this character, with sharp conflict in the testimony of the physicians who, respectively, testified for the litigants.
Three physicians testified for plaintiff and two for the defendant. There is no doubt that plaintiff's right testicle at date of trial was inflamed and swollen to some extent. There is irreconcilable difference *Page 774 
in the opinions of these doctors with respect to the cause and character of the pathology that involves the gland. Two of plaintiff's physicians are of the opinion that it is traumatic orchitis, which means inflammation of the testicle, due to injury, and which, if true, admittedly is disabling. One of plaintiff's doctors was of the opinion that the testicle's condition was directly traceable to the effects of the operation in that the repair work that followed was of such character as to produce interference with circulation. This doctor testified that the original hernia had been eliminated by the operation but he and the other doctors for plaintiff found what they thought to be evidence of incomplete hernia on the left side, but not of a disabling character.
Dr. Wolff, who performed the mentioned operation upon plaintiff, did not discover any evidence of hernia on the left side, either when the operation was performed or thereafter. He did find congenital weakness of the muscles and tissues of both sides. At date of trial he diagnosed the trouble affecting the right testicle as being hydrocele, which means a collection of fluid in the scrotum. This affliction is not necessarily disabling. The testimony of the other physician, introduced on behalf of defendant, in all material respects, corroborates that given by Dr. Wolff. Both are certain the operation was successful. These two doctors were clear in the opinion that at date of trial plaintiff was not disabled to do work of the character he had done before being injured, while defendant's doctors entertained opposite opinions.
When defendant had concluded introduction of its evidence, its attorney in open court, made the following statement and request, to-wit:
"If the Court please, the Workmen's Compensation Law provides that the Court may, on its own motion, or at the suggestion of any party in a case, appoint some medical expert of its own choice, to examine a man who is claiming compensation, to make a report upon his condition as to his findings.
"In this case, as Your Honor well knows, this question of the testicle being involved in a hydrocele, and as his doctors have said, an orchitis has come up. I think on the question of the hernia, the preponderance of the medical testimony shows there is no ground for compensation, but on the question of the testicle, that is something which should be passed upon and examined into by a competent medical expert, a urologist preferably, a specialist in that line, because it does involve a question of urology.
"We respectfully suggest and request that the Court select some competent urologist of the Court's own choice to examine this plaintiff and make a report as to what he finds. We will stand or fall on that examination. I don't know how we could be any fairer."
Plaintiff's counsel's reply is as follows:
"The plaintiff takes the position that this request on the part of the Defendant is too late; it is planned to be made after we have tried this case and either have won or lost. Had they made such a request as this, as permitted by law, in the inception of this case, it would have come with a greater appearance of fairness, but we submit that for the court to appoint one party to make an examination of this plaintiff would be very unfair to the plaintiff, because where witnesses differ you can't close his hands of having any chance to contradict that testimony and leave it to this examination as to the hydrocele or enlargement of the testicle, as to what one witness would report. This is not the contemplation of the Workmen's Compensation Act or the law, that a case should be tried out and left, you might say, to the tossing of a coin, as to whether it is heads or tails, in that manner.
"Plaintiff now states he wasn't through putting on testimony. He proposes to put on certain important testimony in rebuttal in this case, which he desires to put on before the Court rules on this request."
The rejoinder of defendant's counsel follows: "May it please the Court, prior to the trial today, we had no information of any kind which would lead us to believe that plaintiff was claiming that he was suffering from orchitis. We did know he had been informed by Dr. Wolff he had *Page 775 
hydrocele. Plaintiff's own witness testified that any competent physician can tell the difference between hydrocele and orchitis by transillumination. If the Court will investigate, I think there are other methods of determining, by drawing off fluid in the hydrocele, if it is a hydrocele. Since this is important and can be decided one way or the other, we feel that the Court should appoint someone to examine this man and make this test."
Following these arguments, the Court said: "Of course, it is unfortunate that the medical experts disagree on the things we laymen think they should not disagree on. As to why they do, that I don't know, other than that they just honestly see the situation differently. I would have to consider that more than I have done offhand, for the reason I am under the impression — I can't recall who is a good urologist right now — for the further reason, the Court might be making a mistake in making the appointment."
The court finally denied the application. The point is reurged in this court.
Plaintiff relies upon subsection 3 of Section 9, of the Workmen's Compensation Law, Act No. 20 of 1914, as amended, Act No. 38 of 1918, which reads: "If there be any dispute thereafter as to the condition of the employee the Court, upon application of either party, shall order an examination of the employee to be made by a medical practitioner appointed by the Court. * * * Such medical examiner shall report his conclusions from such examination to the Court, and such report shall be prima facie evidence of the facts therein stated in any subsequent proceedings under this act."
[I] Subsection 2 which immediately precedes the quoted section, makes it the duty of the employer to cause to be made a medical examination of the injured employee immediately after notice or knowledge of the accident, and to serve upon the injured employee within six days after the examination a copy of the physician's report. If no such examination is made, it then becomes the duty of the injured employee to furnish the employer with a copy of the report of his examining physician. It is further provided that if either party, so served, desires to dispute the report he shall notify the other party of his intention to do so within six days, otherwise the report shall be prima facie proof of its contents in any subsequent proceeding under the Act. The existence of these provisions and compliance therewith explains the meaning of the first words of the quoted sentence of subsection 3, to-wit: "If there be any dispute thereafter". But, in this case it is not contended that either party served on the other a copy of the report made, respectively, by their physicians. However, we believe that the failure of either party to comply with the provisions of subsection 2 does not deprive him of the right to invoke the provisions of subsection 3 if the facts warrant such action and it is timely exercised. No such penalty is provided. Surely there is a sharp dispute as to the specific character of the ailment with which plaintiff is afflicted and the nature, extent and possible duration of his disability, if any. And, it is equally certain that the real facts serving as a basis of the "dispute" only developed while the trial was in progress.
[2] In workmen's compensation cases, as well as in all others, the paramount duty and desire of courts are to learn the true facts, and far reaching power is vested in them as a means to mete out justice between the litigants. In the present case it is indispensable to a correct and just decision to know exactly the true character of the trouble that involves plaintiff's right testicle. If it is a hydrocele, a minor operation will relieve it. It is possible the original injury and/or operation may not have caused it. If the trouble is orchitis, then the situation is quite different as regards disability, its extent and duration. If the trouble is not hydrocele or orchitis, but is of the character as testified by one of plaintiff's doctors, then total removal of the gland may be necessary in order to attain relief from pain and disability.
It seems to us a physician specially trained and experienced in genito urology should be more competent to enlighten the court concerning plaintiff's physical condition, its cause, etc., than could the physicians *Page 776 
who have testified in the case heretofore.
[3-5] The facts, in our opinion, warranted the court in granting defendant's request for the appointment of a specialist to examine plaintiff and report his findings to the court. The language of the quoted section is mandatory. It says: "The court * * * shall order an examination," etc. As the trial of the case had not been concluded, for this reason and others herein assigned, the request did not come too late. Of course, the report of the specialist whom the court appoints will be only prima facie evidence of its contents.
For the reasons herein assigned, the judgment appealed from is annulled, avoided and reversed, and this case is now remanded to the lower court with instructions to grant the application of the defendant and to appoint a physician specially trained and experienced in genito urology to examine the plaintiff and who shall thereafter report his findings to the court; and to this end the court is empowered to make such other orders as may be necessary to effectuate the purpose for which the case is remanded; all in keeping with law and the views herein expressed.
Costs of appeal are hereby assessed against plaintiff, the appellee. Fixing liability for all other costs will await final decision in the case.
KENNON, J., absent.